[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This involves a marriage between the two parties of twenty-seven years. The plaintiff and the defendant were married at Hartford, Connecticut, on June 13, 1968. The plaintiff has resided in the State of Connecticut continuously for one year next preceding the date of the filing of the complaint. Although there were two children issue of the marriage, both of them have obtained their majority and therefore are not of concern to the court, there no longer being any minor children issue of the marriage. CT Page 7239
Evidence, which has not been disputed, would indicate that the marriage between the parties has broken down irretrievably and the court so finds. What is at issue in this particular case is the disposition of the marital estate and any question of alimony.
In order to determine how this marital estate should be disposed of, the court will have to look at the marriage of the parties and what occurred between them during the period that they remained together as partners in this union. Actually, the marriage for all intent and purpose was terminated some time in May of 1993 when the defendant had the plaintiff removed from the marital premises by way of a restraining order. As a result of the plaintiff being put out of the marital residence, he initiated this action on or about May 20, 1993.
At the very outset, this marriage seemed to have numerous problems. The major problem that occurred was the plaintiff's treatment of the defendant throughout the marriage and her possible or at least her perceived affairs with several friends of the plaintiff. One of the great difficulties the court has had in this trial is that the credibility of both parties is questionable to some extent. Both parties have testified inconsistently in their claims about each other in reference to their own activities during the course of the marriage. The court is inclined to side somewhat with the defendant's position as far as the plaintiff's actions during the course of the marriage, based upon the fact that both of the children came to court to testify on their mother's behalf and corroborated to a large extent as to some of her claims of both physical and verbal abuse by the plaintiff during the course of the marriage.
The plaintiff testified that the wife was unfaithful to him and that she had a relationship on three occasions with men who supposedly were friends of the plaintiff and on one other occasion with a co-worker. One of the affairs is alleged to have occurred just prior to the breakup of the marriage in 1993 but the evidence seems to indicate that if there was any infidelity on the part of the wife, in this particular case, it occurred after the separation and after the commencement of the divorce action. As to the other three incidents, these supposedly took place during the course of the marriage and occurred over a period of several years. The CT Page 7240 wife testified that she never had a physical relationship with any of these people during the course of the marriage and that she was faithful all through the course of the marriage but at one point in her testimony she did indicate that she was unfaithful to her husband, she told him about it and then he forgave her for this. This occurred many, many years ago and was not an immediate cause of the breakup of the marriage. This incident was with a fellow co-worker but she denied any physical relationship with the other parties who were friends of her husband.
There was also testimony that the police were called to the residence on several occasions and a police officer did testify to the fact that there were at least four domestic violence calls for which there were records. In one incident the police officer did arrest the plaintiff but that record was not available as the matter was ultimately dismissed and the arrest record was erased.
Also, the wife did become pregnant at one point in time after the birth of her son and prior to the birth of her daughter. This pregnancy terminated in an abortion and the husband by innuendo suggested it was terminated because he was not the father of the child. This was denied by the defendant who said it was terminated because her doctor recommended it at the time due to the stress she was undergoing at the time, and because of her health condition at the time. Neither party offered any proof as to the truth of their statements in this incident, so the court is left with no real facts upon which to determine why the abortion took place except that it did take place.
Also, the plaintiff claimed that the wife was unfaithful on three of the four occasions that he brought up in court. On cross-examination, he indicated that he had no proof of any unfaithful acts or of a physical or sexual relationship between the wife and any of the parties with whom he accused the defendant of having affairs. The husband did work during the marriage and only during the last year or two had some difficulty maintaining his employment for a short period of time. Also, the wife worked during a large part of the marriage, both as a waitress and since 1988 as an employee of the State of Connecticut.
The plaintiff was a collector of sorts in three areas: CT Page 7241 he evidentially had a feel for antique cars and currently has in his possession a 1946 Ford Sedan Delivery and a 1946 Lincoln Continental. The court is not really aware of the condition of these cars as far as the bodies are concerned but the testimony indicated that neither of them currently had an engine and that the value of the cars were difficult to ascertain at the present time. The plaintiff had a small coin collection and a small fire arms collection. He had some tools which were used for working around the house and a rather extensive record collection of old 78RPM record and some 45RPM records. There was some testimony as to the value of the record collection and the plaintiff's appraisal came in substantially less than the defendant's appraisal. The parties are in agreement in several other areas. The house at 101 Miami Avenue, Newington, Conn., which is in both names, has a value of $116,000 and there are two mortgages totalling $25,000 outstanding reducing the value of the total equity to approximately $91,000. There was an appraisal on the firearms of $1,000 but the appraisal omitted one firearm which was purchased out of the second mortgage proceeds for $900 so that the total firearms collection is about $1,900. If the court were to compromise the differences between the values placed on the cars and the records, the total marital assets would aggregate $107,634. The plaintiff does have a vested pension with Raymond Engineering of $15,851. He also has a checking account of $3,600. The wife shows savings of $200 and jewelry of $1,000.
Before the court makes any allocations of the assets, it probably should go into the difficulties of the marriage a little deeper so that the allocation ultimately made will be more understandable. As stated earlier, neither of the parties were not the most credible of witnesses. Probably the most telling testimony came from the children of the parties. The daughter when testifying did indicate a rather intense dislike for her father. She testified seeing her mother being abused most often verbally but on occasion physically, claiming that she saw her father both hit her mother and choke her mother on occasions. The hitting was generally in the nature of a slap. However, at one time he did punch her with a closed fist. She also testified to an incident where she had been hurt physically by her father when spanked as a young child and also an incident when she was 16 years old where when she reached into a car to try to retrieve her keys, her car keys that her father had taken away from her, he grabbed CT Page 7242 her arm and pulled her into the car and caused her considerable pain. The son, who is currently a corrections officers with the State of Connecticut, also testified that his father was both verbally and physically abusive to his mother. He further testified, and the daughter did also, that the father had some abnormal idiosyncracies. One thing, the children could not walk around the house barefooted for fear of picking up germs that might be tracked in from the outside or for whatever reason. The boy was not allowed to indulge in sports for fear of sustaining injuries. The boy was not allowed to have a bike until he was 10 or 11 years old for fear he would fall off the bike and injure himself. He was not allowed to go camping with other boys because of some unrealistic fears that his father had. There was numerous testimony as to these unrealistic obsessions and abnormalities that the father had as directed both to the children and also to the defendant mother.
The plaintiff is looking for sole ownership of the marital residence because at the time of the purchase he had received an inheritance from his parents' estate that allowed him to make a substantial cash payment towards the house. The original value of the house was $65,000 and the original mortgage was between $25,000 and $30,000 which meant that he invested somewhere between $35,000 and $40,000 in the house. Also, during the length of time that they owned the house which was purchased in 1981 or in that area, he has always paid the mortgage which included taxes, he paid the insurance and he maintained the house. As indicated earlier, the defendant also worked during the course of the marriage and her income was used for the purchase of groceries and clothing and other necessities for the children in the family. She did most of the cooking although he claimed he cooked on occasion. She did the housecleaning and shopping for the family. Because he provided for his family in the way of providing shelter in a manner by which we would expect most heads of the family would do, he feels that he should therefore get the whole house. The fact that the wife provided for other necessities of life which made it possible for him to make the mortgage, taxes and insurance payments and do the maintenance he claims to have done was made possible by the wife working but this does not seem to influence his thinking at all.
The court feels that the wife was not entirely at fault in this marriage but due to the idiosyncracies of the CT Page 7243 plaintiff and due to his abnormal obsessions with some of his manners and thinking and due to the fact that the defendant was the target of both verbal and physical abuse, the court is going to distribute the estate on a 55%/45% basis, with 55% going to the defendant wife, 45% to the plaintiff husband. This also takes into account the fact that a good portion of the husband's contributions to the marital residence came from money he inherited from his parents. The court has considered all the factors set forth in the statutes in this determination as to distribution both as to family assets and any payments to be made in the way of alimony.
Based upon the finding that the value of the marital estate is $107,634 the wife's share will be 55% of said value or $59,198.70. The court further finds that the plaintiff has in his possession a gun collection, coins, records and cars which have a value of $16,634. Applying that against his share of the estate which comes to $48,435.30, this would leave the defendant with a balance due from the marital estate of $31,801.30. The plaintiff further has a pension plan of $15,851 and using the same percentage, his wife is entitled to $8,618.05. If we allow the plaintiff to keep his pension and apply the wife's entitlement of $8,618.05 against his share of $31,801.30 and allow him to keep the entire pension, the plaintiff would have $23,183.25 left to recover from the marital estate. Since the wife is unable to come up with any funds or sums close to that, the court would recommend that the mortgages on the house be consolidated and that the mortgage be increased to add that amount to the mortgage so that the plaintiff would be paid and she would have title to the house. Although the defendant has $3,600 in the checking account and she only has $200 it is difficult for the court to know how the money was accumulated by him either prior or after the separation. The court would be more inclined to believe that he has saved the money in the two years since the separation so that the court will not disturb the cash in his account and the cash in her account or the jewelry that was given to her by friends of the family. Each party has a car in their own name and they will be retained by the individual parties. The only other matter in dispute would be the furnishings in the home. The testimony relative to those furnishings would leave the court with the impression that the furnishings are of little value but to appease the plaintiff, the court will order that the wife pay an additional $2,500 to the plaintiff and retain title to the furnishing. This CT Page 7244 additional $2,500 probably should be added to the mortgage she has to obtain to pay off the plaintiff's share of the marital estate. Since both parties are employed, and their income is fairly comparable, no alimony awards will be made to either party nor will any awards be made for any counsel fees. There was further some dispute for taxes that have not been paid for the year 1993 when the parties resided together for approximately five months but those have been disposed of and no longer show up as liabilities of either party so the court will make no orders relative to those taxes.
The only remaining item that the court is concerned about is that statements were made by the plaintiff to the defendant that if he didn't get what he wanted out of the divorce that he would have to take things into his own hands. Whether the statement was made or not, it does concern the court in view of some of the things that have occurred in the past between other people and the court would hope that nothing of any implied nature happens in this case and the court would order that the plaintiff stay away from the defendant and in no way harass or harm her. This would be in the nature of a restraining order preventing him from carrying out any threats against her and can be used by the police department in the event of any problems the defendant might experience.
Accordingly, the court will enter a decree dissolving the marriage and orders consistent with this memorandum will issue.
Kline, State Trial Referee